**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Signs for Jesus, et al.</u>

      **v.**                              Case No. 15-cv-482-PB
                                         Opinion No. 2017 DNH 016

<u>Town of Pembroke, NH, et al.</u>

<u>**MEMORANDUM AND ORDER**</u>

Hillside Baptist Church and Signs for Jesus want to install an electronic sign on the Church's property in Pembroke, New Hampshire.  They brought this action against the Town of Pembroke, its Zoning Board of Adjustment, and its Code Enforcement Officer, Everett Hodge, after defendants denied plaintiffs' request for a permit to install the proposed sign. Plaintiffs allege violations of the United States Constitution, the New Hampshire Constitution, and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  The matter is before me on cross motions for summary judgment.

## I.   BACKGROUND

### A.   The Pembroke Sign Ordinance

Applications for an electronic sign are governed by Pembroke's sign ordinance.  Pembroke, N.H., Code ch. 143, art. VIII, §§ 143-57 to -66, <u>relevant version available at</u> Doc. No.

1-5.  The stated purpose of the ordinance is to "[p]romote the safety, comfort and well-being of the users of streets;" "improve traffic safety;" "discourage excessive visual competition among signs;" and "[p]reserve or enhance town character by requiring new and replacement signage which is . . . [c]ompatible with the surroundings."  Id. § 143-57.

The ordinance sets out "General requirements" in section 143-58.  Subsection A, entitled "Permitted signs," provides that "[o]nly signs which refer to any lawful use, permitted use or an approved special exception use as set forth in Article IV of this Chapter shall be permitted, provided such signs conform to the provisions of this article."  Id. § 143-58(A).  Below this subsection, a box of text provides that "[s]igns which are required by federal, state or municipal laws are permitted."  Id.  Subsection B lists signs that are generally prohibited.  Id. § 143-58(B).  Subsection G allows all signs that predate the adoption of the ordinance.  Id. § 143-58(G).

The "General requirements" provisions are followed by section 143-59, entitled "Administration," which details the process that must be followed to procure a sign permit.  Subsection A, entitled "Permits," provides that "no sign shall be erected, displayed, altered or enlarged until an application has been filed" and a permit issued.  Id. § 143-59(A).  Within

2

that subsection, provision A(8), entitled "Exception to permits," identifies five types of signs that "shall be exempt from the permitting requirements."[1]

The remaining sections of the ordinance regulate where and how particular types of signs may be used.  Id. §§ 143-60 to -66.  A Table of Signs divides Pembroke into a number of zoning districts (e.g., Commercial, Residential, and Limited Office) and allows certain signs in some districts but not others.  Id. §§ 143-60, -62.

Several years ago, the Town decided to protect its natural aesthetic by limiting the number of electronic signs. Accordingly, the ordinance was amended to bar Electronic Changing Signs in all districts but the Commercial District and limited parts of other districts that abut the Commercial District.  See id. § 143-62, -63(X).  Electronic Changing Signs

_____

[1] Section 143-59(A)(8) provides:
    "Exception to permits: The following signs shall be exempt from the permitting requirements;
        (a) All temporary SALE/RENT/LEASE covered by § 143-63F.
        (b) All political signs covered by § 143-63N.
        (c) All temporary signs advertising yard sales. These signs shall not exceed six square feet in size and must be removed five days after sale.
        (d) Signs less than two square feet in size identifying a personal residency by name and street address.
        (e) Hunting, no trespassing, and other such signs less than two square feet in size.

include "electronic message center (EMC), electronic message sign (EMS), and changeable copy board (CCB) signs." Id. § 143-63(X).  "These signs are capable of storing and/or displaying single or multiple messages in various formats at varying intervals." Id.  Electronic Changing Signs are identifiable by certain physical criteria, including text, graphics, or patterns that are illuminated or flash.  See id.  When allowed, Electronic Changing Signs are subject to the additional minimum requirements specified by the ordinance, such as a limitation on their nighttime brightness, "along with all other requirements for signage within" the sign ordinance as a whole.  Id.

B.   **Procedural History**

Hillside Baptist Church (the "Church") wants to install its electronic sign next to the road on its property at 547 Pembroke Street in Pembroke, New Hampshire.  Although the Church has an existing sign that can be changed manually, it hopes to upgrade to an electronic sign that can be remotely preprogrammed to display different messages each day.  The new sign would display religious messages, and it would be provided by Signs for Jesus, a non-profit corporation "whose purpose is to publicly display daily Bible scriptures to the public via road signs."[2]

---

[2]  Signs for Jesus joins in the Church's claims but it does not present any unique arguments.  For ease of discussion, I focus on the Church's arguments in this Memorandum and Order and apply

4

The Church is located in Pembroke's Limited Office ("LO") district, in which both residential and limited commercial development is permitted but electronic signs are barred.  Two electronic signs are currently in use on the same road as the Church in districts that do not permit such signs.  The first, which is on property owned by a gas station in the LO district, predates the adoption of the sign ordinance.  The second is on property owned by Pembroke Academy, a public school in the Residential district.[3]

In April 2015, the Church applied for a permit to install an electronic sign.  Town Code Enforcement Officer Everett Hodge determined that section 143-64(X) of the ordinance classifies the Church's proposed sign as an Electronic Changing Sign.  Because the proposed sign would be erected in Pembroke's LO district — where electronic signs are prohibited — Hodge denied the Church's application.  His decision was based solely on the Church's ineligible location, not its religious identity or proposed messages.

---

my rulings to both plaintiffs' claims.

[3] Pembroke Academy is operated by School Administrative Unit ("SAU") 53, which is a subdivision of the state.  See N.H. Rev. Stat. Ann. § 100-A:20(I) (characterizing SAUs as political subdivisions of the state).

In May 2015, the Church filed an administrative appeal and a variance request with the Town's Zoning Board of Adjustment ("the Board").  The Church contended that the permit denial violated its rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000(cc), and the United States and New Hampshire constitutions.  The Board held a public hearing on July 27, 2015, where it heard from the Church and community members.  In rejecting the Church's appeal and variance request, the Board found that Hodge had correctly interpreted the sign ordinance, that a variance was not required under ordinary variance criteria, and that federal law did not require a contrary result.  When the Board explained its decision, it emphasized the Town's interest in promoting a semi-rural aesthetic by limiting electronic signs in the LO district.

In August 2015, the Church requested a rehearing. Following a presentation by the Church, the Board again denied the Church's administrative appeal and variance request.  In announcing the Board's decision, the Vice Chairman of the Board read from the draft motion that had been provided by counsel. It later issued a written Notice of Decision.

In November 2015, the Church filed its complaint here, claiming state and federal free speech, free exercise of

religion, equal protection, and due process violations, along
with claims under RLUIPA's substantial burden and equal terms
provisions.[4]  Doc. No. 1 at 9-24.  The complaint names as
defendants the Town of Pembroke (the "Town"), its Zoning Board
of Adjustment, and its Code Enforcement Officer, Everett Hodge.[5]
Id. at 1.  The Church seeks declaratory, injunctive, and
monetary relief.  Id. at 24-25.  The parties have filed cross
motions for summary judgment.  Doc. Nos. 32, 34.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and [that] the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  The evidence in the record must be considered in the
light most favorable to the nonmoving party, drawing all

---

[4] The Church also seeks to appeal the Board's decision under N.H.
Rev. Stat. Ann. § 677:4.  The parties have agreed, however, that
the Church's state statutory claims should be stayed pending the
adjudication of its constitutional and RLUIPA claims.  Signs for
Jesus v. Town of Pembroke, 2016 DNH 059, 9.

[5] The Church's arguments are directed primarily at the Town, and
the parties have not argued that a claim may be maintained
against either Hodge or the Zoning Board if it fails against the
Town.  Accordingly, I focus on the Church's claims against the
Town and apply my rulings to the claims against all defendants.

reasonable inferences in its favor.  See Navarro v. Pfizer
Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the
absence of any genuine dispute of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one
'that might affect the outcome of the suit under the governing
law.'"  United States v. One Parcel of Real Prop. with Bldgs.,
960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)), abrogated in part on
other grounds.  If the moving party satisfies this burden, the
nonmoving party must then "produce evidence on which a
reasonable finder of fact, under the appropriate proof burden,
could base a verdict for it; if that party cannot produce such
evidence, the motion must be granted."  Ayala-Gerena v. Bristol
Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex,
477 U.S. at 322-23.

On cross motions for summary judgment, the standard of
review is applied to each motion separately.  See Am. Home
Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812
(1st Cir. 2006); see also Mandel v. Boston Phoenix, Inc., 456
F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-motions
for summary judgment neither dilutes nor distorts this standard
of review.").  Thus, I must "determine whether either of the

parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

### III.   ANALYSIS

The principal issue in this case is whether the Town improperly denied the Church's request for an electronic sign permit.  The Church argues that the Town's denial of its request violates its First Amendment right to free speech, its First Amendment right to freely exercise its religion, its state and federal constitutional rights to equal protection, its Fourteenth Amendment right to procedural due process, and its rights under RLUIPA's undue burden and equal terms provisions. In addition to these claims, the Church challenges other aspects of the zoning ordinance that have no direct bearing on whether the Church is entitled to an electronic sign.  I begin by examining the Town's contention that the Church lacks standing to challenge aspects of the zoning ordinance that have no direct connection to its request for an electronic sign.

### A.   Standing

The Church attacks several sections of the zoning ordinance that have no bearing on whether it is entitled to install an electronic sign on its property.  For example, it complains that

9

the ordinance improperly authorizes content-based exemptions
from the sign permitting requirement, even though the Church is
barred by the ordinance from installing an electronic sign on
its property regardless of whether it is subject to the
permitting requirement.  It also argues that the ordinance
improperly excludes churches from the Commercial district, even
though it has no plans to relocate to that district.  The Town
responds by arguing that the Church lacks standing to challenge
aspects of the zoning ordinance that have no bearing on its
alleged injury.

    The Supreme Court has explained that "[t]o establish
Article III standing, an injury must be 'concrete,
particularized, and actual or imminent; fairly traceable to the
challenged action; and redressable by a favorable ruling.'"
Clapper v. Amnesty Int'l USA, 133 S.Ct. 1138, 1147 (2013)
(quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149
(2010)).  In the present case, the Church's inability to obtain
an electronic sign has nothing to do with the sign permitting
requirement because the Church would be barred from installing
an electronic sign on its property even if the permit
requirement were invalidated.  Nor is its entitlement to an
electronic sign affected by the fact that it cannot build in the
Commercial district because the Church has no plans to build a

church in that district.  Accordingly, the Church lacks standing

to raise these claims because its alleged injury is not fairly

traceable to the sections of the ordinance it challenges.  See

Tanner Advert. Grp v. Fayette County, 451 F.3d 777, 791 (11th

Cir. 2007) (en banc).

The Church cannot acquire standing by construing its claims

as a facial attack on the ordinance.  See Members of City

Council of City of Los Angeles v. Taxpayers for Vincent, 466

U.S. 789, 796-98 (1984).  "[A] holding of facial invalidity

expresses the conclusion that the statute could never be applied

in a valid manner."  Id.  But "[t]he seminal cases in which the

Court held state legislation unconstitutional 'on its face' did

not involve any departure from the general rule that a litigant

only has standing to vindicate his own constitutional rights."

Id.  Facial challenges do "not create any exception from the

general rule that constitutional adjudication requires a review

of the application of a statute to the conduct of the party

before the Court."  Id.; cf. Maverick Media Grp. v. Hillsborough

County, 528 F.3d 817, 820-23 (11th Cir. 2008) (per curiam).

The overbreadth doctrine also cannot save the Church here.

The Church cites the overbreadth doctrine in only a single line

of its complaint.  That bare assertion neither mentions the

connection between overbreadth and standing, nor asserts that

11

the ordinance is substantially overbroad.  In any event, "[t]he
overbreadth doctrine does not . . . grant a plaintiff carte
blanche to challenge an entire ordinance merely because some
part of the ordinance — to which the plaintiff is not subject —
might be unconstitutional." Maverick, 528 F.3d at 822.  Rather,
"a plaintiff who has established constitutional injury as to
himself under a provision of a statute may also attack that
provision under the overbreadth doctrine to vindicate the rights
of others not before the court." Id. at 822; see also FW/PBS,
Inc. v. City of Dallas, 493 U.S. 215, 233-34 (1990), overruled
in part on other grounds by City of Littleton v. Z.J. Gifts D-4,
L.L.C., 541 U.S. 774, 781 (2004).  The overbreadth doctrine
"does not, because it may not, waive the Article III requirement
that the plaintiff have suffered a real injury in fact as to a
challenged provision of an ordinance." Maverick, 528 F.3d at
822; see also Prime Media, Inc. v. City of Brentwood, 485 F.3d
343, 350 (6th Cir. 2007) ("Prime Media's standing with regard to
the size and height requirements does not magically carry over
to allow it to litigate other independent provisions of the
ordinance without a separate showing of an actual injury under
those provisions.").

12

For these reasons, the Church lacks standing to challenge provisions in the ordinance that are unrelated to its request for an electronic sign permit.

**B.   <u>Free Speech</u>**

The Church first argues that the Town violated the Church's First Amendment right to free speech.[6]   I evaluate this claim by determining the appropriate level of scrutiny that must be applied to the Town's actions and then considering whether those actions can be justified under the applicable scrutiny standard.

1.   <u>The Town's Actions are Subject to Intermediate Scrutiny</u>

The First Amendment subjects content-based speech restriction to more exacting scrutiny than content-neutral restrictions.  <u>Rideout v. Gardner</u>, 838 F.3d 65, 71 (1st Cir. 2016), <u>petition for cert. filed</u>, No. 16-838 (U.S. Dec. 27, 2016).  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  <u>Reed v. Town of Gilbert</u>, 135 S. Ct. 2218, 2227 (2015).  Content-based regulations include both those that "cannot be 'justified without reference to the content of the regulated speech'" and those that were "adopted

---

[6] The Church also brings a free speech claim under the New Hampshire constitution, but does not argue that the state constitution affords greater protection.  Accordingly, I analyze the federal and state claims using federal law.

13

by the government 'because of disagreement with the message [the speech] conveys.'"   Id. (alteration in original) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).  Content-based restrictions trigger strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."  Id. at 2231 (quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 564 U.S. 721, 734 (2011)).

Content-neutral regulations, in contrast, face less exacting scrutiny.  Such regulations "serve[] purposes unrelated to the content of expression."  Rideout, 838 F.3d at 71 (quoting Ward, 491 U.S. at 791).  They trigger only intermediate scrutiny, which permits the government to "impose reasonable restrictions on the time, place, or manner of protected speech," so long as "they are narrowly tailored to serve a significant governmental interest, and . . . they leave open ample alternative channels for communication of the information."  McCullen v. Coakley, 134 S. Ct. 2518, 2529 (2014) (quoting Ward, 491 U.S. at 791).  Content-neutral regulations "'need not be the least restrictive or least intrusive means of' serving the government's interests."  Rideout, 838 F.3d at 72 (quoting McCullen, 134 S. Ct. at 2535).

The Church does not challenge the Town's claim that the electronic sign provision is content-neutral on its face. Nevertheless, it argues that the Town's decision to deny its request for an electronic sign is subject to strict scrutiny because it draws speaker-based distinctions that improperly permit some speakers to have an electronic sign but not others. In particular, it objects to the fact that the provision applies to new speakers but not grandfathered speakers, and nongovernmental speakers but not governmental speakers.

The Supreme Court explained in Reed that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." 135 S.Ct. at 2230 (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 658 (1994)); see also Turner, 512 U.S. at 658 ("[S]peaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say).").  Accordingly, "[c]haracterizing a distinction as speaker based is only the beginning — not the end — of the inquiry." Reed, 135 S. Ct. at 2231.

A zoning ordinance that favors grandfathered speakers over new speakers based on the content of the regulated speech may be subject to strict scrutiny even if the regulation appears to be

15

content-neutral on its face.  See id. at 2230; cf. Ackerley Communc'ns of Mass. v. Cambridge, 88 F.3d 33, 39 (1st Cir. 1996) (considering grandfathering provision that conferred benefit "in content-based terms that have no aesthetic justification and effectively penalize[d] a category of speakers based on their prior choice of message.").  Here, however, the grandfathering provision at issue is derived from N.H. Rev. Stat. Ann. § 674:19, a state law that broadly exempts all preexisting nonconforming uses of property from local zoning requirements. Because the exemption does not directly or indirectly regulate users on the basis of the content of affected speech, it does not trigger strict scrutiny even though it treats some speakers differently from others.

The Church next points to the fact that government land users are not subject to the electronic sign ordinance and argues that this distinction between government and nongovernment land users draws improper speaker-based distinctions that warrant strict scrutiny.  Again, I disagree.

The distinction the Town draws between government and nongovernment land users results from the fact that government land users are exempt from local zoning ordinances pursuant to state law.  See Region 10 Client Mgt., Inc. v. Town of Hampstead, 120 N.H. 885, 888 (1980); Opinion of the Justices,

16

113 N.H. 217, 218 (1973); see also N.H. Rev. Stat. Ann. § 674:54
(requiring governmental entity to provide notice of proposed use
to municipality); Pembroke, N.H., Code ch. 143, art. VIII, §
143-58(A), relevant version available at Doc. No. 1-5 ("Signs
which are required by federal, state or municipal laws are
permitted.").[7]  This exemption, like the grandfathering
provision, does not discriminate based on the content of
affected speech.  Instead, it ensures that New Hampshire's
interest in using its own land — an interest that extends beyond
municipal concerns — is not thwarted by local land use
restrictions.  The state avoids this difficulty by declining to
empower the Town to regulate land uses by the state or political
subdivisions such as SAU 53, which operates Pembroke Academy.

The exemption of governmental land users from local zoning
applies regardless of whether a proposed use implicates speech,
suggesting that the legislature did not have speech in mind,
much less prefer government messages over citizens' messages.
The record is also devoid of evidence suggesting that the Town
applied the electronic sign ordinance unevenly in a way that

---

[7] The Church also points to an exemption for "temporary
governmental agency signs which carry public service
announcements and notices."  See § 143-63(P).  But the Church
does not seek a temporary sign.  Moreover, this exemption lacks
independent significance because it is subsumed under the
broader government land use exemption.

suggests a content preference.  Thus, the government land use exemption does not reflect a content preference and does not trigger strict scrutiny.

Because the Town's content-neutral regulation of electronic signs is not subject to strict scrutiny, I review the Town's decision to deny the Church an electronic sign permit under the intermediate scrutiny standard.

2.   The Town's Actions Survive Intermediate Scrutiny

Content-neutral regulations of signs are "permissible so long as they are narrowly tailored to serve a significant governmental interest and allow for reasonable alternative channels of communication." Naser Jewelers, Inc. v. City Of Concord, 513 F.3d 27, 33-34 (1st Cir. 2008).  The sign ordinance at issue here states that its goals include aesthetics and traffic safety.  See § 143-57.  The electronic sign provision was intended, for example, to promote a more natural aesthetic than the neighboring town of Hooksett, especially along the Pembroke Street/Route 3 corridor.  See Doc. No. 34-4 at 10; Doc. No. 34-2 at 3.  The record reveals no ulterior purpose.  See Naser, 513 F.3d at 34 (declining to second-guess stated purpose of content-neutral sign regulation).  Accordingly, I evaluate the Town's actions by determining whether its stated goals in

furthering aesthetics and traffic safety qualify as significant
governmental interests.

In the abstract, "[b]oth traffic safety and community
aesthetics have long been recognized to constitute significant
governmental interests." Id.  The Church's assertion that
aesthetic interests alone can never suffice is belied by Supreme
Court and First Circuit case law.  See, e.g., Metromedia, Inc.
v. City of San Diego, 453 U.S. 490, 507–08 (1981) (plurality
opinion) ("The twin goals that the ordinance seeks to further —
traffic safety and the appearance of the city — are substantial
governmental goals.  It is far too late to contend otherwise
with respect to either traffic safety or esthetics." (footnote
and citations omitted)); Vincent, 466 U.S. at 807 ("[T]he visual
assault on the citizens of Los Angeles . . . constitutes a
significant substantive evil within the City's power to
prohibit."); Naser, 513 F.3d at 34; Globe Newspaper Co. v.
Beacon Hill Architectural Comm'n, 100 F.3d 175, 187 (1st Cir.
1996) ("[A]esthetic interests constitute a significant
government interest."); id. at 188 n.14 ("The term 'significant
interest' is equivalent to the terms 'important interest' and
'substantial interest,' and these phrases are often used
interchangeably."  (quoting Rodney A. Smolla & Melville Nimmer,

A Treatise on The First Amendment, § 3.02[3][A] at 3-36 & n.95
(1994))).

Moving from the abstract to the present case, the
electronic sign ban at issue here advances a significant
government interest in aesthetics.  The Town has "a weighty,
essentially esthetic interest in proscribing intrusive and
unpleasant formats for expression" such as electronic signs.
See Vincent, 466 U.S. at 806-07.  Such signs can be garish and
otherwise worsen the aesthetic environment in the small
community of Pembroke, especially in the Pembroke Street
corridor.  See id.; Naser, 513 F.3d at 34-35 (holding that
Pembroke's neighboring city "plainly" advanced significant
aesthetic interest by banning EMCs).  The Town's aesthetic
interests "are both psychological and economic" because "[t]he
character of the environment affects the quality of life and the
value of property." Vincent, 466 U.S. at 817.  In the present
case, the Town directly advanced its aesthetic interest by
banning electronic signs, and that interest is not nullified by
other types of development in the LO district.

With respect to traffic safety, I am in no position to
second guess the Town's determination that its regulation of
electronic signs addresses traffic safety hazards by reducing
distractions.  See Metromedia, 453 U.S. at 510 (giving deference

to "the accumulated, common-sense judgments of local lawmakers . . . that billboards are real and substantial hazards to traffic safety" when not unreasonable).  Unwarranted judicial scrutiny of Pembroke's traffic safety judgments "would be trespassing on one of the most intensely local and specialized of all municipal problems."  See Metromedia, 453 U.S. at 509 (quoting Ry. Express Agency v. People of State of New York, 336 U.S. 106, 109 (1949)).

Pembroke is a small town with limited resources and it was not required to conduct controlled empirical studies to quantifiably substantiate its safety concerns.  See Naser, 513 F.3d at 35.  The potential hazard of distracting signs such as Electronic Changing Signs is supported by the record and precedent, and the Town's judgment is entitled to deference because it is not unreasonable.  See Metromedia, 453 U.S. at 509-10; Naser, 513 F.3d at 34 ("EMCs, which provide more visual stimuli than traditional signs, logically will be more distracting and more hazardous.").  Accordingly, the Town advances significant government interests in support of its decision to deny the Church's request for an electronic sign.

Having determined that the electronic sign ordinance advances significant government interests, I also must determine whether it is narrowly tailored to achieve its stated purposes.

21

See Naser, 513 F.3d at 34.  The Town's regulation of electronic signs may neither be "substantially broader than necessary to protect" the Town's interests, nor underinclusive.  See Vincent, 466 U.S. at 808, 810-11.  The Town must "allow for reasonable alternative channels of communication," but "is not required to choose the least restrictive means possible: '[T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.'"  Naser, 513 F.3d at 33-35 (quoting Ward, 491 U.S. at 800).

Applying these standards here, the Town's regulation of electronic signs is not overinclusive.  The Town wishes to promote a natural aesthetic by restricting electronic signs. Because such signs pose an aesthetic problem, the Town "did no more [in banning them] than eliminate the exact source of the evil it sought to remedy."  See Vincent, 466 U.S. at 808 (finding ban on posted signs was narrowly tailored); see also Metromedia, 453 U.S. at 510 (noting that billboards, "by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm'").  Business development in the area near the Church — such as the warehouse and clean energy filling station, which are barely visible from the road on Pembroke Street – neither nullifies the Town's aesthetic

22

interest, nor sounds a death knell for the efforts to advance
that interest.  See Vincent, 466 U.S. at 811-12; Rzadkowolski v.
Village of Lake Orion, 845 F.2d 653, 655 (6th Cir. 1988)
(finding ban on billboards everywhere but village's industrial
zone satisfied intermediate scrutiny).  Thus, the Town's
regulation of electronic signs did not burden "substantially
more speech than is necessary."  Vincent, 466 U.S. at 799.

The Town also "leave[s] open ample alternative channels for
communication of the information" that the Church wishes to
convey.  Ward, 491 U.S. at 791 (quoting Clark v. Cmty. for
Creative Non-Violence, 468 U.S. 288, 293 (1984)).  As in Naser,
"signs are not banned, nor is the use of signs with manually
changeable type."  513 F.3d at 36.  The Church may communicate
the same religious messages with its current manually changeable
sign as it could with an electronic sign.  See id. ("Even if
EMCs are considered to be a particular 'medium,' the fact that a
regulation bans a particular medium does not mean that the
ordinance is not narrowly tailored."); Globe Newspaper, 100 F.3d
at 193, 195 (finding that ban on street newsracks left open
ample alternative channels of communication because "the
Newspapers are free to distribute their publications from the
very same spot within the public forum where their newsracks
have been located").  Moreover, the Church may communicate its

23

messages using a wide variety of means beyond signs.  See Kovacs v. Cooper, 336 U.S. 77, 89 (1949) (plurality opinion).

The regulation of electronic signs is also not fatally underinclusive.  "Strange as it may seem, the First Amendment may forbid the regulation of . . . 'too little' speech (because exemptions to the regulation remove an entire topic of speech from debate, advantage one side of the debate over another or undermine the credibility of the government's explanation for restricting speech at all)."  Prime Media, 398 F.3d at 822.  But the Supreme Court has rejected the "argument that a prohibition against the use of unattractive signs cannot be justified on esthetic grounds if it fails to apply to all equally unattractive signs wherever they might be located."  Vincent, 466 U.S. at 810-11.  "Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the [town's] appearance" and satisfy narrow tailoring.  See id. at 811.

The limited exceptions to the ordinance do not render the regulation of electronic signs fatally underinclusive, as the Church suggests.[8]  By allowing electronic signs in the Commercial

---

[8] The ordinance does not, as the town asserts, confer unbridled discretion on the Code Enforcement Officer to approve or deny Electronic Changing Signs.  Compare §§ 143-62 (banning electronic signs based on location); 143-63(X) (defining electronic signs using objective physical criteria and cohesive

district but not elsewhere, the Town made a reasonable judgment that a lessened aesthetic interest in that area should cede to a strong countervailing interest in economic development.  See id. at 810-11; Metromedia, 453 U.S. at 511–12 ("The city has decided that in a limited instance . . . its interests [in aesthetics and traffic safety] should yield.  We do not reject that judgment.").  Moreover, as I explain below in analyzing the Church's equal protection arguments, the Town has sound reasons to treat grandfathered and governmental users differently from new nongovernmental applicants such as the Church.

For these reasons, the Town's content-neutral regulation of electronic signs satisfies intermediate scrutiny and the Town is entitled to summary judgment on the Church's free speech claim.

**B.   <u>Free Exercise of Religion</u>**

The Church next argues that the Town infringed its First Amendment right to the free exercise of religion.[9]  The government may not "prohibit" the free exercise of religion.  U.S. Const. amend. I; Emp't Div., Dep't of Human Res. v. Smith,

---

examples), with Van Wagner, 770 F.3d at 35, 40 (finding unbridled discretion where enforcement authority was based on capacious, disparate, and non-exhaustive factors, and official had limitless revocation authority).

[9] The Church also brings a free exercise claim under the New Hampshire constitution, but does not argue that the state constitution affords greater protection.  Accordingly, I analyze the state and federal claims using federal law.

494 U.S. 872, 876-77, 904 (1990) (subsequent history omitted).
But "the right of free exercise does not relieve an individual
of the obligation to comply with a 'valid and neutral law of
general applicability on the ground that the law proscribes (or
prescribes) conduct that his religion prescribes (or
proscribes).'" Smith, 494 U.S. at 879 (quoting United States v.
Lee, 455 U.S. 252, 263 n. 3 (1982) (Stevens, J., concurring in
judgment)).  As discussed, the Town's ban on electronic signs is
valid and neutral, and there is no evidence in the record that
would support a claim that it targets religion.  Accordingly,
the Town is entitled to summary judgment on the Church's free
exercise claim.

## C.  **Equal Protection**

The Church claims that the Town violated the Church's
federal and state constitutional rights to equal protection when
it denied the Church's request for an electronic sign while
allowing Pembroke Academy to keep its electronic sign.  These
claims fail as a threshold matter because the Church and
Pembroke Academy are not similarly situated.

To establish a viable equal protection claim under either
federal or state law, the Church must prove, among other things,
that it was treated differently from other "similarly situated"
entities.  McGraw v. Exeter Region Co-op Sch. Dist., 145 N.H.

709, 711 (2001); see Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015).  "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'"  Davis, 802 F.3d at 133 (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001)).

Applying this standard here, the Church is not similarly situated to Pembroke Academy because, unlike the Church, Pembroke Academy is a subdivision of the State of New Hampshire that the Town has no authority to regulate.  Pembroke Academy is operated by School Administrative Unit ("SAU") 53, a political subdivision of the state.  See N.H. Rev. Stat. Ann. § 100-A:20. New Hampshire has delegated zoning power to local municipalities but it has not empowered them to regulate either the state itself or its political subdivisions.  See Region, 120 N.H. at 888; Opinion of the Justices, 113 N.H. at 218.  Instead, when a governmental entity proposes to undertake a new governmental land use or to substantially modify an existing use on property it owns or controls, state law merely requires the governmental entity to provide notice of the proposed use to the governing body and planning board of the community where the property is

27

located.  See N.H. Rev. Stat. Ann. § 674:54.  In contrast, the
state has expressly empowered municipalities to regulate land
uses by nongovernmental entities.  See N.H. Rev. Stat Ann. §
674:16.  Under these circumstances, no reasonable observer could
conclude that the Church and Pembroke Academy are similarly
situated when it comes to the Town's ability to regulate
proposed land uses.[10]

The Church seeks to overcome this obstacle by arguing that
any dissimilarity between the Church and Pembroke Academy is
inconsequential because it arises solely from the operation of
state law.  I am unpersuaded by the Church's argument, but its
equal protection claims fail in any event because the Town had
good grounds both to reject the Church's request for an

---

[10]  In Cmty. Res. for Justice, Inc. v. City of Manchester
(Community Resources II), 157 N.H. 152, 153–55 (2008), the New
Hampshire Supreme Court invalidated a local zoning ordinance on
equal protection grounds because the ordinance barred privately
run halfway houses but not similar halfway houses operated
directly by the state.  The court, however, did not address the
substantial similarity requirement in its decision.  Construing
the court's holding on this unexamined point narrowly, I
understand the decision to merely recognize that a private
halfway house operated pursuant to a contract with a
governmental entity is sufficiently similar to a halfway house
operated directly by a governmental entity to permit an equal
protection challenge to be based on a claim of differential
treatment between the two types of halfway houses.  The decision
thus does not support the broader proposition that governmental
and nongovernmental entities are similarly situated for zoning
purposes, even though local zoning authorities lack the power to
regulate governmental land uses.

electronic sign permit and to treat the Church differently from
Pembroke Academy.

Whenever a plaintiff bases an equal protection claim on a
contention that it has been treated differently from another
similarly situated entity, the scrutiny that the differential
treatment receives will vary from "strict scrutiny" at one end
of the spectrum to "rational basis" review at the other.  The
federal and state constitutions address the issue in similar but
not identical ways.  Under both federal law and New Hampshire
law, distinctions that are drawn on the basis of "suspect"
classifications or that target "fundamental" rights are subject
to strict scrutiny.  See Mills v. Maine, 118 F.3d 37, 46 (1st
Cir. 1997); Comty. Res., Inc. v. City of Manchester (Community
Resources I), 154 N.H. 748, 758 (2007).  Under federal law,
subject only to limited exceptions that are not relevant here,
"[l]egislation or regulation that neither employs a suspect
classification nor impairs fundamental rights will survive
constitutional scrutiny provided the remedy is 'rationally
related to a legitimate governmental purpose.'"  Mederios v.
Vincent, 431 F.3d 25, 29 (1st Cir. 2005), overruled in part on
other grounds by Bond v. United States, 564 U.S. 211, 216-20
(2011).  In contrast, the New Hampshire constitutional right to
equal protection subjects most non-suspect classifications to

rational basis review but applies intermediate scrutiny to classifications that affect "important substantive rights," such as interests in land.  See Community Resources I, 154 N.H. at 758.

The Town's decision to deny the Church's request for an electronic sign is subject to rational basis review under federal law because the Town neither based its decision on a suspect classification nor infringed the Church's fundamental rights.  See Mederios, 431 F.3d at 29; Wirzburger v. Galin, 412 F.3d 271, 282-83 (1st Cir. 2005).  Because, however, the Town's decision affects an interest in land, its decision is subject to the more exacting intermediate scrutiny standard under New Hampshire law.  Community Resources I, 154 N.H. at 758.  Under this standard, the burden is on the Town to demonstrate that its actions are substantially related to important governmental objectives.  Id. at 762.

As I explained in resolving the Church's free speech claim, the electronic sign ordinance is narrowly tailored and serves the important governmental objectives of promoting traffic safety and aesthetics.  The Town also has strong reasons to treat governmental and nongovernmental landowners differently. The Town cannot prevent Pembroke Academy from installing an electronic sign on its property because the state has not given

it the power to regulate governmental land uses.  New Hampshire
and its political subdivisions will often need to use their
property to benefit the interests of constituencies that extend
well beyond the boundaries of the city or town in which the
property is located.  Governmental landowners also have unique
interests as landowners that local zoning ordinances do not
address and that local land use authorities may not value.
Existing New Hampshire law, which requires a governmental entity
to notify and consult with local land use authorities, permits
governmental entities to balance their own interests with those
of local land use authorities without subjugating themselves to
the judgments of municipal officials who in many cases represent
narrower constituencies.  Because proposed nongovernmental land
uses ordinarily do not present the same mix of concerns, the
state is justified in treating them differently.  For these
reasons, both the Town's decision to deny the Church's request
for an electronic sign, and the state's decision to delegate its
power over zoning issues to its municipal subdivisions while
exempting itself from local zoning ordinances, are substantially
related to important governmental interests.[11]

---

[11]  The Church hints at other potential equal protection
arguments but those arguments fail because they have not been
properly developed.  See Hudon v. Colvin, 2016 DNH 019, 9 n.3.
Accordingly, I comment on them only briefly.  Any claim that the
Town violated the Church's equal protection rights because it

**D.   RLUIPA**

The Church next argues that the Town violated RLUIPA's substantial burden and equal terms provisions.  I address each argument in turn.

1.   No Substantial Burden

RLUIPA's substantial burden provision states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution," unless doing so "is the least restrictive means of furthering [a] compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).  RLUIPA does not define the term "substantial burden," and the Supreme Court has not provided guidance.

---

was treated differently from prior nonconforming users fails because applicants for new land uses ordinarily are not similarly situated to grandfathered land users.  See Cal. Outdoor Equity Partners, LLC v. City of Los Angeles, 145 F. Supp. 3d 921, 931 (C.D. Cal. 2015); Jucha v. City of North Chicago, 63 F. Supp. 3d 820, 831 (N.D. Ill. 2014).  Treating grandfathered users differently also serves important governmental interests because grandfathered users have expectancy interests in their ability to use their property that are not shared by new applicants.  See City of New Orleans v. Dukes, 427 U.S. 297, 305 (1976) (per curiam), abrogated in part on other grounds by Metro. Life Ins. Co. v. Ward, 470 U.S. 869, 882 (1985); Maldonado v. Morales, 556 F.3d 1037, 1048 (9th Cir. 2009).  Any claim that the Town violated the Church's equal protection rights by allowing electronic signs in the commercial district but not elsewhere fails for similar reasons.  Cf. Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 766-67 (7th Cir. 2003).

The First Circuit considers the "common-usage understandings" of the terms "burden" and "substantial" as they are used in RLUIPA.  Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 96 (1st Cir. 2013).  It construes a "burden" to mean "[s]omething that hinders or oppresses" or "something oppressive or worrisome."  Id. at 96 (quoting Black's Law Dictionary 223 (9th ed. 2009); Merriam-Webster's Collegiate Dictionary 152 (10th ed. 1993)).  It likewise describes the meaning of "substantial" as "significantly great."  Id. (quoting Merriam-Webster's Collegiate Dictionary at 1174 (10th ed. 1993)).  In assessing whether a land use regulation imposes a substantial burden, the First Circuit also considers whether the regulation: 1) targets religious entities "because of hostility to that religion itself," 2) appears facially neutral but is "designed to reach a predetermined outcome contrary to the group's requests," or 3) was imposed in an arbitrary and capricious manner, such as by "disregard[ing] objective criteria" or relying "on misunderstandings of legal principles."  Id. at 96-97.

Here, the Town did not substantially burden the Church's religious exercise by denying it an electronic sign.  The Church has an existing sign at the same location, at the end of its driveway, whose message is capable of being changed manually.

33

There is insufficient evidence to conclude that changing the existing sign manually is "oppressive" or "worrisome" to a "significantly great" extent.  See id. at 96 (quoting Merriam-Webster's Collegiate Dictionary at 152, 1174).  The Church's assertions that it lacks the manpower to change the sign every single day, and that occasional inclement weather is an impediment, do not suffice because the Church is not entitled to the most efficient or inexpensive means of communicating its message.  See Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761-62 (7th Cir. 2003).

The factors that a court may consider when evaluating a substantial burden claim are also absent here.  The electronic sign ordinance features objective physical criteria, is neutral with respect to religion, and was not enacted to further anti-religious motive.  See Roman Catholic, 724 F.3d at 96-97.  Further, the Town applied the regulation and the neutral variance criteria in a well-considered and straightforward manner, not "arbitrarily, capriciously, or unlawfully."  Id. at 97; cf. Westchester Day Sch. v. Village of Mamaroneck, 504 F.3d 338, 351-52 (2d Cir. 2007) (finding substantial burden where zoning board's decision was "characterized . . . by an arbitrary blindness to the facts," including a miscalculation and assumptions unsupported by board's own experts).  Far from

34

acting carelessly or misunderstanding the legal principles at
stake, Board members educated themselves on the issues of
federal law before reaching a final decision on the Church's
requests.  See Roman Catholic, 724 F.3d at 97; cf. Sts.
Constantine and Helen Greek Orthodox Church, Inc. v. City of New
Berlin, 396 F.3d 895, 899–901 (7th Cir. 2005) ("[R]epeated legal
errors" by city suggested city was either "deeply confused about
the law" or "playing a delaying game").  Neither the ordinance
itself nor its application to the Church reflected an outcome-
driven approach masquerading as neutral decisionmaking.  See
Roman Catholic, 724 F.3d at 96; cf. Guru Nanak Sikh Soc'y of
Yuba City v. County of Sutter, 456 F.3d 978, 989 (9th Cir. 2006)
(religious group denied permit without adequate explanation or
guidance despite agreeing to requested mitigation measures).
Thus, none of the First Circuit's factors warrant finding a
substantial burden here.

     2.  No Treatment on Less Than Equal Terms

The Church also argues that the Town violated RLUIPA's
equal terms provision by denying the Church an electronic sign
while allowing a nearby gas station and Pembroke Academy to have
electronic signs.  The equal terms provision provides that "[n]o
government shall impose or implement a land use regulation in a
manner that treats a religious assembly or institution on less

35

than equal terms with a nonreligious assembly or institution."
42 U.S.C. § 2000cc(b)(1).  "Determining whether a municipality
has treated a religious entity 'on less than equal terms'
requires a comparison between that religious entity and a
secular one."  Third Church of Christ, Scientist, of N.Y. City
v. City of New York, 626 F.3d 667, 669 (2d Cir. 2010).  "The
circuits disagree as to the applicable comparator in a RLUIPA
'equal terms' analysis," and the First Circuit has not yet
articulated its view.  See Roman Catholic, 724 F.3d at 100.  In
the absence of clear guidance from the First Circuit, I follow
those courts that have concluded that a RLUIPA equal terms
violation requires proof that the plaintiff has been treated
less well than a similarly situated secular comparator.  See
generally Tree of Life Christian Schools v. City of Upper
Arlington, 823 F.3d 365, 370 (6th Cir. 2016) (collecting cases).
In conducting this analysis, I ask whether the proposed
comparator is similarly situated "in light of the purpose of the
regulation."  Lighthouse Inst. For Evangelism, Inc. v. City of
Long Branch, 510 F.3d 253, 264-65 (3d Cir. 2007).

The Church compares itself to a gas station that has an
electronic sign in the LO district.  The gas station, however,
kept its sign because it was installed prior to the ban, and
thus qualifies under the zoning ordinance's neutral

grandfathering provision.  The Church is ineligible for grandfathering based on chronology, not religious identity.  See Vision Church v. Village of Long Grove, 468 F.3d 975, 1003 (7th Cir. 2006) (finding comparators invalid where they were "subject to different standards because of the year" in which they sought permit), abrogation in part on other grounds recognized by Brunson v. Murray, 843 F.3d 698, 706 (7th Cir. 2016).  Thus, the gas station is not a valid comparator.

Nor is Pembroke Academy a valid comparator.  As I have explained, the Town cannot prevent Pembroke Academy from having an electronic sign because the state has deprived the Town of any power to regulate governmental land uses.  Accordingly, the Church is not similarly situated to Pembroke Academy and thus cannot base its equal terms claim on a contention that the two entities were treated differently.  See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1311 (11th Cir. 2006) (entities are not similarly situated where "they sought markedly different forms of zoning relief, from different decision-making bodies, under sharply different provisions of local law"); Chabad Lubavitch of Litchfield Cty, Inc. v. Litchfield Hist. Dist. Comm'n, 768 F.3d 183, 197 (2d Cir. 2014);  see also Grace Church of Roaring Fork Valley v. Board of Cty Comm'rs, 742 F. Supp. 2d 1156, 1163-64 (D. Colo.

2010) (public high school not similarly situated to church because school locations are determined by school district whereas church sought permission to build from county commissioners).[12]

For these reasons, the Town is entitled to summary judgment on the Church's substantial burden and equal terms claims.

**E.   Due Process**

The Church asserts that it was denied due process because the Zoning Board of Adjustment unconstitutionally pre-judged its appeal and variance request before issuing a formal decision.[13] "A sufficient procedural due process claim must allege 'that

---

[12] The Church's reliance on Digrugilliers v. Consolidated City of Indianapolis, 506 F.3d 612 (7th Cir. 2007) is misplaced. In that case, state law barred the sale of liquor and pornography within specified distances from a church. Id. at 616. The City of Indianapolis cited the state law as a justification for a zoning restriction that required churches to obtain a variance before operating in the city's commercial district. See id. In rejecting the city's argument, the court held that a special privilege granted to churches by the state — in this case, the ability to prevent sales of liquor and pornography in the vicinity of a church — could not be used to justify a decision by the city to bar churches from the city's commercial district. Id. at 616-17. The court's decision, however, in no way calls into question the reasoning of those courts that have held that entities that are subject to different regulatory regimes and are regulated by different governmental bodies are not similarly situated for purposes of a RLUIPA equal terms claim.

[13] The Church also brings a due process claim under the New Hampshire constitution, but does not argue that the state constitution affords greater protection. Accordingly, I analyze the federal and state claims using federal law.

[the plaintiff] was deprived of [a] constitutionally protected [interest] because of defendants' actions, and that the deprivation occurred without due process of law.'" Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992) (quoting Roy v. City of Augusta, 712 F.2d 1517, 1522 (1st Cir. 1983)).  But a deprivation alone does not suffice.  The Church must also allege that constitutionally-adequate state law remedies are unavailable.  See id. at 999. This element is "critically important."  Id.  The Church fails to allege that constitutionally adequate state law remedies, such as an ordinary zoning appeal of the Board's decision to the New Hampshire Superior Court, were unavailable.  Because the Church does not satisfy this requirement, the Town is entitled to summary judgment on the Church's due process claim.[14]

## IV.  CONCLUSION

My decision in this case is impacted by several conclusions that affect all of the Church's claims.  First, the Town's decision to deny the Church's request for an electronic sign had nothing to do with either religion or the content of the

---

[14] The parties have agreed to stay the Church's claims under N.H. Rev. Stat. Ann. § 677:4.  Having disposed of all of the Church's federal claims, I decline to exercise supplemental jurisdiction over these claims.  Accordingly, they are dismissed without prejudice.

Church's speech.  Second, the decision served the Town's important governmental interests in aesthetics and traffic safety in a manner that was narrowly tailored to serve those interests.  Third, the decision does not unreasonably burden the Church's right to practice its religious beliefs, to practice free speech, or to use its property.  Finally, the Town has not treated the Church differently from any other similarly situated landowner.  In light of these conclusions, the Church's contention that it should be free from the effect of the Town's electronic sign ordinance amounts to a demand, not for a level playing field, but instead for a right to be treated differently from all other private landowners.  Neither the state and federal constitutions nor RLUIPA requires this result.  Accordingly, the plaintiffs' motion for summary judgment (Doc. No. 32) is denied, and defendants' motion for summary judgment (Doc. No. 34) is granted.  Plaintiffs' state statutory claims are dismissed without prejudice.

        SO ORDERED.


                            /s/Paul Barbadoro
                            Paul Barbadoro
                            United States District Judge

January 27, 2017
cc:  Pierre A. Chabot, Esq.
     Michael J. Tierney, Esq.
     Christopher Cole, Esq.
     Garry R. Lane, Esq.
     Megan C. Carrier, Esq.
                            40